IN THE CIRCUIT COURT FOR IN AND FOR FLAGLER COUNTY

| | |
|---|---|
| DANIEL FINERMAN, individually, and on behalf of all others similarly situated, | CASE NO: |
| *Plaintiff*, v. | COMPLAINT – CLASS ACTION |
| MARRIOTT VACATIONS WORLDWIDE CORPORATION, a foreign corporation, and INTERNATIONAL CRUISE EXCURSION GALLERY, INC., a foreign corporation, | JURY TRIAL DEMANDED |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiff, Daniel Finerman, individually and on behalf of all persons similarly situated (the "Class" or "Class Members"), by and through undersigned counsel, brings this Class action Complaint against Defendants, Marriott Vacations Worldwide Corporation, a foreign profit corporation, and International Cruise & Excursion Gallery, Inc., a foreign profit corporation, and alleges as follows:

### NATURE OF THE ACTION

1. Pursuant to Florida Rule of Civil Procedure 1.220(a), (b)(2), (b)(3) and (c)(4), Plaintiff brings this consumer class action lawsuit against Defendants, Marriott Vacations Worldwide Corporation and International Cruise Excursion Gallery, Inc., for their conduct in inflating and/or deceptively creating certain fees claimed to be owed to governmental entities and port authorities when booking cruises for consumers, and retaining those inflated or fictitious fees for their own profit and gain.

2. Plaintiff expressly reserves the right to amend and supplement this Complaint as other information relevant to this action becomes available.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff, Daniel Finerman, is an individual residing in Flagler County, Florida. The acts described below, and the damages to Plaintiff, for the most part, took place in this Circuit.

4. Defendant, Marriott Vacations Worldwide Corporation (hereinafter Marriott Vacation Club), is a foreign profit corporation with its principal place of business in Orlando, Florida. Marriott Vacations Worldwide Corporation operates substantial business in this state and is subject to personal jurisdiction in this state.

5. Defendant, International Cruise & Excursion Gallery, Inc. (hereinafter International), is a foreign corporation doing business in this state and is authorized to do business in this state. International's status with the Florida Department of State, Division of Corporations, is listed as active.  It has registered the fictitious name "Our Vacation Center" with the Florida Department of State.  Its office is listed as 15501 N Dial Blvd., Scottsdale, Arizona. 85250. International at all times described herein acted as the agent for Marriott Vacation Club in handling and booking cruises for consumers such as Plaintiff who were members of Marriott Vacation Club. Marriott Vacation Club is responsible and liable for the acts of International.

6. This Court has jurisdiction over this action as the amount in controversy exceeds $15,000.00.

7. Venue is proper in this Circuit because, as alleged in this Complaint, Defendants conducted and transacted business in this Circuit, and a substantial portion of the events and conduct giving rise to the violations complained of in this action occurred in this Circuit.

## FACTUAL ALLEGATIONS

8. Plaintiff and Class Members are residents of Florida and possibly various states throughout the United States.

9. Defendant, Marriott Vacation Club is the primary timeshare brand of Marriott Vacations Worldwide Corporation. The brand comprises more than 50 Marriott Vacation Club properties throughout the United States, Caribbean, Europe, and Asia and more than 400,000 owners. Marriott Vacation Club resorts consist of one, two, and three-bedroom villas.

10. Marriott Ownership Resorts, Inc. was started in 1984 on Hilton Head Island, South Carolina with the acquisition of American Resorts and its 122 villas on Hilton Head Island, which later became the Marriott's Monarch at Sea Pines resort. In 1985, Marriott Rewards started a partnership with the Marriott Ownership Resorts. In 1995, Marriott Ownership Resorts, Inc. was renamed, becoming Marriott Vacation Club International (MVCI) reflecting the company's evolution from real estate development to vacations. In 2007, Marriott Vacation Club International began to market its core timeshare brand as Marriott Vacation Club.

11. In November of 2011, Marriott Vacation Club was spun off from Marriott International and became a publicly traded company (NYSE: VAC) under the new parent company Marriott Vacations Worldwide, based in Orlando, Florida. Marriott Vacation Club is one of 3 brands which include The Ritz-Carlton Destination Club and Grand Residences by Marriott as well. Marriott Vacation Club markets to the public a timeshare concept which, in exchange for a one time purchase provides the purchaser, now an owner, with an annual

allotment of Vacation Club Points-flexible "vacation currency" that can be used each year towards the owner's choice of timeshare vacations. On its website, Marriott Vacation Club describes its points system as follows:

> **Use your Vacation Club Points to experience dream vacations.**
>
> Marriott Vacation Club resort stays are assigned a Vacation Club Points value based on accommodation size, length of stay, location and season. Owners in the Marriott Vacation Club Destinations™ program can choose from any location and any size villa, check in on any day they wish and stay as long as they want — or use Vacation Club Points to experience other types of vacations such as cruises, tours, exchanges, hotel stays and travel services.
>
> **You get a new allotment every year.**
>
> One of the greatest aspects of points-based vacation ownership in the Marriott Vacation Club Destinations™ program is that your Vacation Club Points are replenished each year. That means, every year you will get to choose from an ever-growing collection of exciting timeshare vacations — currently more than 5,000 unique options and experiences. Return to a favorite destination every year or explore the world and never experience the same vacation twice. It's all up to you, and each year you get to choose.
>
> **You can bank or borrow for even greater flexibility.**
>
> Got an idea for a truly epic vacation? Plan on bringing a big group this year? No problem. As a timeshare Owner in the Marriott Vacation Club Destinations program, if your vacation plans call for more Vacation Club Points than your annual allotment, you can enjoy the flexibility to borrow from the following year's balance to be used toward this year's vacation. Or, will your schedule only allow for a short vacation this year? You won't lose any Vacation Club Points; you can bank the remainder for use next year, if you like.
>
> **You can add Vacation Club Points at any time.**
>
> As your life changes, your vacation ownership can evolve right along with you. Plus, as your vacation portfolio grows, you can achieve Premier or Premier Plus status with Marriott Vacation Club — and enjoy enhanced benefits such as access

to VIP weekends, select The Ritz-Carlton Club locations, luxury cruises, Marriott Rewards® upgrades and more.

12.     Marriott Vacation Club claims that is the leader in Timeshare Ownership offering the ultimate in vacation flexibility with a deeded, points-based ownership program.

13.     As a Marriott Vacation Club Owner, Defendant claims that annual Vacation Club Points can be used to enjoy weeks of vacation in luxurious destinations, for weekend getaways and other vacation experiences. The types of vacations available for owners are as follows:

- Marriott Vacation Club Collection6 - More than 50 Marriott Vacation Club resorts
- Marriott Collection3 - More than 3,000 Marriott hotels and resorts
- Explorer Collection4 - Specialty travel options including safaris, wine tours and cruises
- World Traveler Collection5 - More than 2,500 affiliate resorts in 75 countries

14.     The purchase price for ownership is not cheap. On its website, it provides a few examples of the costs of Vacation Club Points.  Here are a few examples of popular Vacation Club Points levels:

| Vacation Club Points | Financing Available* | | Annual Maintenance Fees | Annual Club Dues |
| --- | --- | --- | --- | --- |
| | 10% Down Payment | Approximate Monthly Payment | | |
| 1,500 Points | $1,818 | $262 | $675 | $175 |
| 2,500 Points | $3,030 | $416 | $1,125 | $175 |
| 3,500 Points | $4,242 | $557 | $1,575 | $175 |

15.     Defendants engage in a common course of conduct and practice of creating, inflating and collecting deceptively inflated government fees and port fees in booking cruises for members of Marriott Vacation Club. While members use points in booking cruises, Defendants charge members of the Marriott Vacation Club cash for certain other fees such as government fees and port fees which they deceptively create or inflate and then retain these sums.

## INDIVIDUAL PLAINTIFF'S ALLEGATIONS

16.     Plaintiff, Daniel Finerman, became a member of Marriott Vacation Club in 2005 when he purchased a one week timeshare in Aruba. As a member of Marriott Vacation Club, Plaintiff also became a member of the Explorer Club which allows its members to obtain points in exchange for not using their time share allotment at the timeshare. Plaintiff's week is currently worth 3075 points which he can use for other vacation destinations and cruises.

17.     With his points, Plaintiff booked and paid through Marriott Vacation Club a 6 day Western Caribbean cruise departing from Ft. Lauderdale on November 9, 2013. The cruise was on a vessel operated as part of the Carnival Cruise Line. The cost of the cruise for him and his spouse was 2650 points. In addition to his points, Plaintiff was billed by Marriott Vacation Club the sum of $566.17, which consisted of the following: $159.00 each for Port fees, $114.11 each for Government Fees, and a processing fee of $19.95, for which he paid.

18.     Concerned about these costs, Plaintiff called Marriott Vacation Club and was told by a company representative that these fees were not covered by points.

19.     Plaintiff booked the cruise using his points and paid the extra sum of $ 566.17.

20.     The amounts charged and paid by Plaintiff were fabricated, or at the very least inflated to increase Defendants' profits, and these deceptively billed and collected sums were

never intended to and were not in fact paid to any governmental entity or port authority in their entirety, and these sums were retained by Defendants.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on his own behalf and on behalf of all others similarly situated as permitted by Florida Rules of Civil Procedure 1.220(a), (b)(2), (b)(3) and (c)(4). Plaintiff is informed and believes there are at least thousands in the proposed Class. The proposed Class consists of:

> **All persons throughout the United States who from 2010 to date were members of the Marriott Vacation Club and who booked a cruise through Defendants.**

Defendants are excluded from the Class as well as any entity in which the Defendants have a controlling interest, along with Defendants' legal representatives, officers, directors, assignees and successors. Also excluded from the Class is any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons, and the members of the judge's staff.

22. The Class is so numerous that joinder of all Members is impracticable. Information in the records of Defendants will establish the names and addresses of class members and the size of the class.

23. The common questions of law and fact among all Class Members predominate over any issues affecting individual Class Members and include the following:

   a. Whether Defendants' conduct in billing and collecting government fees and port fees in an amount not due or owing to any government or port authority is unfair, deceptive, and/or unconscionable;

    b. Whether, by collecting and retaining government fees and port fees in an amount not due or owing to any government or port authority Defendant has unjustly retained a benefit at the expense of Plaintiffs and the Class;

    c. Whether Plaintiff and Class Members are entitled to injunctive relief;

    d. Whether Plaintiff and Class Members have sustained monetary loss and the proper measure of that loss; and

24. Plaintiff will fairly and adequately protect the interests of the Class.

25. Plaintiff's claims are typical of those of other Class Members, as there are no material differences in the facts and law underlying their claims and Plaintiff's prosecution of their claims will advance the claims of all Class Members.

26. Plaintiff has retained competent counsel experienced in the prosecution of this type of Class litigation.

27. Class treatment of the claims set forth in this Complaint is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation, particularly in light of the damages involves when compared with just the filing fees alone, would make it impracticable or impossible for the proposed Class Members to prosecute their claims individually. Absent a Class action, a multiplicity of individual lawsuits would be required to address the claims between the Class Members and Defendants so that inconsistent treatment and adjudication of the claims would likely result.

28. The litigation and trial of Plaintiff's claims are manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, the presence of a reasonable mathematical based methodology for generalized proof of damages and the impact of Defendants' conduct on the class, and the readily ascertainable identities of many Class

Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a Class action.

29. Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

30. Defendants have acted or refused to act on grounds that apply generally to the Class, making final injunctive relief appropriate to the Class as a whole.

31. Defendants' acts and omissions are the direct and proximate and/or direct cause of damage described more fully in the paragraphs set forth in this Complaint.

## COUNT I – VIOLATION OF FDUTPA

32. Plaintiff realleges and incorporates herein by reference Paragraphs 1 to 31 as if fully set forth herein.

33. Plaintiff asserts this cause of action on behalf of themselves and the Class.

33. Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §501.201, *et seq.*,. declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.201.

34. Plaintiff and Class members are "consumers" as defined by Florida Statute §501.203(7), and the subject transactions are "trade or commerce" as defined by Florida Statute §501.203(8).

35. Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, et seq. Defendants' practices described herein were likely to, and did in fact, deceive

and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

36. Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce by, inter alia, their deceptive creation, inflation and collection of government fees and port fees which were not owed to either governmental entities or port authorities and by the retention of those sums.

37. Defendants' conduct is clearly unfair deceptive and unconscionable as the practice of falsely creating or inflating a government fee or port fee above and beyond that which is owed to a government or port authority has long been regarded as a deceptive practice.

## COUNT II – UNJUST ENRICHMENT

38. Plaintiff realleges and incorporate herein by reference Paragraphs 1 to 31 as if fully set forth herein.

39. Plaintiff asserts this cause of action on behalf of themselves and the Class.

40. Plaintiff and the Class have conferred a benefit upon Defendants by paying them sums for government fees and port fees which were not owed to either governmental entities or port authorities which were retained by Defendants.

41. By its unlawful conduct alleged herein, Defendants have unjustly received and retained a benefit at the expense of Plaintiff and Class Members.

42. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and the Class that it unjustly received as result of its conduct alleged herein without providing compensation to Plaintiff and Class Members.

43. Plaintiff and the Class have suffered financial loss as a direct result of

Defendant's conduct.

44. Plaintiff and Class Members are entitled to restitution of, disgorgement of, or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of their conduct alleged herein.

## RELIEF SOUGHT

**FOR ALL THESE REASONS**, Plaintiff individually and on behalf of all others similarly situated, seeks relief as more fully set forth in this Complaint as follows:

a. For an order certifying that the action may be maintained as a Class action, under Rule 1.220 of the Florida Rules of Civil Procedure, appointing Plaintiff, Daniel Finerman, as Class Representative, and appointing his counsel as Counsel for the Class;

b. For an award of equitable relief as follows:

   i. Enjoining Defendants from engaging in similar unfair, unlawful, and deceptive misconduct in the future;

   ii. Requiring Defendants to disgorge all ill-gotten gains flowing from the wrongful conduct described in this Complaint;

c. For an award of attorney's fees and costs;

d. For an award of damages; and

e. For any further legal and equitable relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on issues so triable.

                                     Respectfully submitted,

                                     /s/ John A. Yanchunis
                                     **JOHN A. YANCHUNIS, ESQUIRE**
                                     FBN: 0324681
                                     ▮▮▮@forthepeople.com
                                     **TAMRA C. GIVENS, ESQUIRE**
                                     FBN: 657638
                                     ▮▮▮@forthepeople.com
                                     **MORGAN & MORGAN**
                                     **COMPLEX LITIGATION GROUP**
                                     201 North Franklin Street, 7th Floor
                                     Tampa, Florida 33602
                                     ▮▮▮-5505 Telephone
                                     ▮▮▮-5402 Facsimile